# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| MARILYN ALTIZER, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:14CV00007 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| TOWN OF CEDAR BLUFF, VIRGINIA, ET AL., | ) | By: James P. Jones |
| | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*Michael A. Bragg, Bragg Law, Abingdon, Virginia, for Plaintiffs; W. Bradford Stallard, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendants.*

In this action under 42 U.S.C.A. § 1983 (West 2012), the plaintiff, a former municipal employee, claims that she was fired in violation of the First Amendment, on account of public comments made on her behalf about the alleged misappropriation of funds from the town employees' deferred compensation plan. She further contends that her funds from the plan were taken from her without just compensation, in violation of the Fifth Amendment's Takings Clause. The suit also bases recovery on pendant state causes of action for wrongful termination, conversion, and breach of fiduciary duty.

The defendants have now moved to dismiss the action for failure to state any claim. The individual defendant also seeks to establish his qualified immunity

from suit. For the reasons that follow, the defendants' motion will be granted in part and denied in part.

I

In accord with familiar principles, I must accept for present purposes the facts of the case as set forth in the Complaint.

The plaintiff Marilyn Altizer was formerly employed as an assistant town clerk for the Town of Cedar Bluff, Virginia (the "Town"). During her employment with the Town, Mrs. Altizer participated in a deferred compensation plan. Pursuant to this plan, established under a provision of the Internal Revenue Code,[1] the Town withheld $110 from each of Mrs. Altizer's biweekly paychecks, to be deposited in a trust account managed by a third party. On April 12, 2013, upon receipt of a benefits statement, Mrs. Altizer learned that no contributions had been made to the trust account during 2013, despite the deductions from her paycheck. She approached Town Mayor Jerry Herron and "was told that [Town Manager James K.] McGlothlin had been directed to cash a Town certificate of deposit and make the payments to the Plan." (Compl. ¶ 6.) Mrs. Altizer came to understand that "[t]he Town, acting through McGlothlin, had a policy by which it would not transmit moneys withheld from employees to The Plan but would hold those

---

[1] 26 U.S.C.A. § 457 (West 2011) ("Deferred compensation plans of State and local governments and tax-exempt organizations.").

moneys for later payment, utilizing those withheld employee funds for the Town's benefit." (*Id.*) Mrs. Altizer claims that she "was ordered by the [the mayor] to not disclose what she had learned." (*Id.*)

Mrs. Altizer's private efforts to discuss the issue with council members and with McGlothlin were not fruitful, and as a result, on May 14, 2013, she and her husband and co-plaintiff Timothy Altizer appeared before the Town Council at its regular public meeting. Mr. Altizer asked to be placed on the agenda and he addressed the Council. "He advised the Town Council that he was speaking on behalf of Marilyn Altizer and asked that the Town Council publicly address and explain the policy of holding payments withheld from employees and not transmitting those moneys to the investment plan." (*Id.* ¶ 8)[2] Three days later, on May 17, McGlothlin terminated Mrs. Altizer's employment and "falsely accused [her] of poor job performance as a pretext for his action." (*Id.* ¶ 9.)

Thereafter, Mr. and Mrs. Altizer filed the present suit against both the Town and Town Manager McGlothlin, seeking compensatory and punitive damages. Count One of the Complaint charges a violation of the First Amendment in relation to Mrs. Altizer's termination. Count Two alleges a violation of the Takings Clause arising from the Town's alleged use of the deferred compensation plan. The remaining counts assert violations of state law.

---

[2] The Complaint also alleges that Mrs. Altizer addressed the Town Council at this meeting, but does not recite her remarks.

The defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The plaintiffs have submitted a brief in response, but I will not consider it in ruling on the defendants' motion. In the first place, it is untimely. Under this court's Local Rules, unless otherwise ordered, a response to a motion is due no later than 14 days after service. W.D. Va. Civ. R. 11(c). The response here was filed 32 days after service and without any effort to obtain leave of court for this tardiness.

Secondly, to the extent that the plaintiffs' brief in opposition refers to new facts not previously alleged, it is out of bounds. In determining a motion to dismiss under Rule 12(b)(6), I am limited to the facts set forth in the complaint. *Car Carriers, Inc. v. Ford Motor Co.* 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *see E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011) ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion.")[3]

---

[3] The plaintiffs could have filed an amended complaint alleging additional facts. The rules permit an amended complaint as a matter of course without consent of the opposing party or leave of court within 21 days after service of a 12(b)(6) motion. Fed. R. Civ. P. 15(a)(1)(B). However, no amended complaint was filed pursuant to this rule and the plaintiffs have not requested leave to file an amended complaint.

Even though no proper response was filed in opposition to the Motion to Dismiss, I am still obligated to consider the motion on its merits. *See Goldberg v. Danaher*, 599 F.3d 181, 183-84 (2d Cir. 2010).

II

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether the pleader has properly stated a cognizable claim. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Federal pleading standards require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As the Fourth Circuit has explained,

> The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." It requires the plaintiff to articulate facts, when accepted as true, that "show" that the plaintiff has stated a claim entitling him to relief, i.e., the "plausibility of 'entitlement to relief.'"

*Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

It is also contended that Town Manager McGlothlin is protected from suit based on the doctrine of qualified immunity because his conduct did "not violate

clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).[4] Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Baltimore Cnty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013). Where a plaintiff "(1) allege[s] a violation of a right (2) that is clearly established at the time of the violation," a motion to dismiss on qualified immunity grounds must be denied. *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012).

III

A. First Amendment Retaliation.

In Count One of the Complaint, the plaintiffs assert that "[t]he Town, by and through Defendant McGlothlin, terminated the employment of Marilyn Altizer in direct retaliation for the exercise of the rights of free speech on matters of public concern." (Compl. ¶ 12.)

---

[4] The Town itself cannot avoid the action based on the doctrine of qualified immunity. The Supreme Court has held that "unlike various government officials, municipalities do not enjoy immunity from suit — either absolute or qualified — under § 1983." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993).

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). In evaluating "whether a public employee has stated a claim under the First Amendment for retaliatory discharge," *McVey v. Stacy*, 157 F.3d 271, 277-78 (4th Cir. 1998), I must consider:

> (1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) whether the employee's speech was a substantial factor in the employee's termination decision.

*Id*. at 277-78. The defendants challenge the first prong,[5] contending that "it is abundantly clear that the identified statements are mere personal grievances regarding a term of Marilyn Altizer's employment." (Defs.' Mem. Supp. Mot. Dismiss 7.)

"Whether speech fairly relates to a public concern or expresses a private grievance or a matter of immediate self-interest must be determined by the content, the form, and the context of the speech." *Stroman v. Colleton Cnty. School Dist.*, 981 F.2d 152, 156 (4th Cir. 1992). Speech properly addresses a matter of public

---

[5] Because the defendants have not challenged the satisfaction of the second and third prongs, I will not address them at this stage in the case.

concern when "it affects the social, political, or general well-being of a community." *Edwards v. City of Goldsboro*, 178 F.3d 231, 246 (4th Cir. 1999). "Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment . . . ." *Stroman*, 981 F.2d at 156.

I find that the public comments alleged to have been made on Mrs. Altizer's behalf were sufficiently focused on the purported malfeasance of the Town and its manager rather than simply about her personal grievance. Accordingly, I cannot dismiss her First Amendment claim on this basis. *See Robinson v. Balog*, 160 F.3d 183, 188 (4th Cir. 1998) (holding that speech exposing "actual or potential wrongdoing or breach of public trust on the part of government employees" is speech on a matter of public concern. (internal quotation marks and citation omitted)).

Having found Mrs. Altizer has alleged a violation of a right, I must next determine whether that right was clearly established at the time of the violation, for purposes of the qualified immunity analysis. I find that it was. In so finding, I am mindful that a high level of generality is inappropriate and "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense." *Anderson v. Creighton*, 483 U.S.

635, 640 (1987). "[A] constitutional right is clearly established when its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006) (internal quotation marks and citation omitted). The Fourth Circuit has "been clear that where public employees are speaking out on government misconduct, their speech warrants protection." *Durham v. Jones*, 737 F.3d 291, 303 (4th Cir. 2013). It was clearly established in the law of the Fourth Circuit in May 2013 that an employee's speech about governmental misconduct is protected. As such, a reasonable official would understand that the discharge of a public employee for her complaints about the alleged misappropriation of municipal funds is a constitutional violation. Therefore, defendant McGlothlin cannot establish a right to qualified immunity on the face of the present pleadings.

I emphasize that I merely hold that Mrs. Altizer's First Amendment claim is sufficient to survive a motion to dismiss. *See Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013). ("A Rule 12(b)(6) motion to dismiss 'does not resolve contests surroundings facts, the merits of a claim, or the applicability of defenses.'") (quoting *Republican Party of N. C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

The defendants also argue that plaintiff Timothy Altizer cannot state any claim "because the face of the Complaint shows that the defendants did not take any action against him." (Defs.' Mem. Supp. Mot. Dismiss 23.) The Supreme

Court has recognized that "when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (internal quotation marks and citation omitted). The Third Circuit recently held that "a party has standing to bring an action for First Amendment political affiliation retaliation pursuant to § 1983, even where, as here, the alleged retaliation was directed towards another individual, provided the party can satisfy '[t]he irreducible constitutional minimum' of Article III standing." *Montone v. City of Jersey City*, 709 F.3d 181, 197 (3rd Cir. 2013) (quoting *Lujan*, 504 U.S. at 560-61) (alteration in original). Assuming this decision is persuasive, Article III standing requires Mr. Altizer to show that: (1) he has suffered an injury in fact; (2) the injury is causally connected to the conduct at issue; and (3) a favorable decision would redress the injury. *See Orlando Residence, Ltd. v. Nelson*, No. 13-1402, 2014 WL 1345975, at *6 (4th Cir. Apr. 7, 2014) (unpublished). Mr. Altizer has alleged no injury in fact and has failed to explain how a favorable decision for him would redress any injury. Because the Complaint does not allege facts sufficient to satisfy the minimum requirements of Article III standing, the Complaint will be dismissed as to any claim by Timothy Altizer.

B. Fifth Amendment Takings Claim.

Mrs. Altizer also claims that the alleged embezzlement of her deferred compensation and subsequent reimbursement with alternative municipal funds constituted an unconstitutional taking. The Fifth Amendment's Takings Clause, applicable to the states through the Fourteenth Amendment, forbids the taking of private property "for public use, without just compensation." U.S. Const. amend. V.

Before the court can determine whether a particular governmental action has resulted in a taking of private property, the plaintiff "must first establish that it had a protectable property interest cognizable under the Fifth Amendment." *Foggy Bottom Ass'n v. D.C. Office of Planning*, 441 F. Supp. 2d 84, 89 (D.D.C. 2006). "Property interests, of course, are not created by the Constitution," but rather, "stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *see also Carnes v. Parker*, 922 F.2d 1506, 1509 (10th Cir. 1991) (discussing property interests in the context of a procedural due process claim and noting that they "are created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract."). Importantly, to possess a protected property interest, one "must have more than an abstract need or desire for it . . .

[or] a unilateral expectation of it," and "must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577.

The defendants claim that Mrs. Altizer has not established the existence of a constitutionally protected property interest, and "[a]t most, then the plaintiffs have alleged that the defendants violated some undefined, unattributed right to a more speedy deposit of the funds." (Defs.' Mem. Supp. Mot. Dismiss 8.) That is, however, a mischaracterization of the allegations. Mrs. Altizer avers that "The Town was in fact using moneys earned by employees and withheld from employees' pay as a 'float' of cash to enable the Town to operate on those moneys belonging to Altizer and other employees and held in trust for their respective benefits by The Town." (Compl. ¶ 7.)

The defendants also argue that, even if Mrs. Altizer has alleged a cognizable property interest, there was no deprivation of that property interest. However, "[i]t is well established that temporary takings are as protected by the Constitution as are permanent ones." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1033 (1992) (Kennedy, J. concurring) (citing *First English Evangelical Lutheran Church of Glendale v. Cnty. of L.A.*, 482 U.S. 304, 318 (1987)). The income generated by the plan described in this case must be held in trust for the exclusive benefit of the employee, according to 26 U.S.C.A. § 457(g)(1). It is at least implicit that the alleged misappropriation of Mrs. Altizer's deferred funds caused her an investment

loss.  For this reason, Mrs. Altizer has successfully alleged a deprivation of her interest in the income generated by the deferred funds.

The defendants believe that, "[i]f Altizer had any claim at all (which the town denies), it would presumably be a claim for breach of contract (the retirement plan documents), not a takings claim."  (Defs.' Mem. Supp. Mot. Dismiss 8-9.) Even so, "contractual rights are cognizable property interests protected by the Takings Clause of the Fifth Amendment." *Earman v. United States*, 114 Fed. Cl. 81, 112 (2013).  But the "plaintiffs would only be entitled to one recovery" from a Fifth Amendment taking that also resulted in a breach of contract, so "the taking claim is an alternative claim to the breach of [ ] contract claim." *Sun Oil Co. v. United States*, 572 F.2d 786, 817 (Ct. Cl. 1978).

Having found Mrs. Altizer has alleged a violation of the Fifth Amendment's Takings Clause, I must next determine in connection with the claim of qualified immunity whether the right was clearly established at the time of the violation.  I find that it was not.  Although the alleged misappropriation was arguably in violation of § 457(g), there is no case law in this circuit, or otherwise, that bears on similar facts.  For this reason, I conclude that a reasonable official would not have concluded that the Town's temporary use of these funds, later reimbursed, was a violation of the Takings Clause.  As such, this claim will be dismissed as against the individual defendant McGlothlin.

IV

The Complaint asserts three pendant state claims relying upon the same factual allegations as the § 1983 claims: (1) wrongful termination; (2) conversion; and (3) breach of fiduciary duty.[6] Count Three of the Complaint asserts the wrongful termination claim. Count Four (misnumbered in the Complaint as Count Three) asserts both the conversion and breach of fiduciary duty claim. Each state law claim is addressed in turn.[7]

### A. Wrongful Discharge Claim.

The plaintiffs allege that "[t]he Defendants terminated the employment of Marilyn Altizer because of her public exposure of The Town's unlawful practice of using for its own benefit moneys withheld from employees and held in trust." (Compl. ¶ 19.)

Generally, employment in Virginia is at will, but the Supreme Court of Virginia, in *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985),

---

[6] Although the Complaint does not specify the particular claims asserted against each defendant, I will assumed that it asserts the wrongful discharge claim against both the Town, which employed Mrs. Altizer, and Town Manager McGlothlin, who was her supervisor and actually terminated her. *See VanBuren v. Grubb*, 733 S.E.2d 919, 923 (Va. 2012) (holding that common law tortious wrongful discharge claim can be asserted against individual supervisor or manager who participated in the wrongful firing).

[7] The Employee Retirement Income Security Act of 1974 exempts governmental plans from coverage. 29 U.S.C.A. § 1003(b)(1) (West 2011). Thus, there are no preemption concerns and Virginia law will control.

created "an exception to the employment-at-will doctrine limited to discharges which violate *public* policy, that is, the policy underlying existing laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general." *Miller v. SEVAMP, Inc.*, 362 S.E.2d 915, 918 (Va. 1987). This exception only applies in narrow circumstances, and "[a]s a threshold matter, a plaintiff attempting to assert a wrongful discharge claim pursuant to *Bowman* must identify a Virginia statute that the employer-defendant violated by terminating the plaintiff." *Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 450 (E.D. Va. 2002).[8] The defendants contend that "[b]ecause Altizer has failed to plead that her termination violated any statutory public policy, her claim for wrongful discharge must be dismissed." (Defs.' Mem. Supp. Mot. Dismiss 15.)

It is true that the Complaint does not cite a particular statutory basis for the wrongful discharge claim. But complaints are meant to state facts, not citations of law. *See Bartholet v. Reishauer A.G. (Zurrich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("Instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations."). There is a Virginia statute that provides as follows:

---

[8] "A *Bowman* claim must find root in a *state* statute." *McCarthy v. Texas Instruments, Inc.*, 999 F. Supp. 823, 829 (E.D. Va. 1998).

> Nothing in this chapter shall be construed to prohibit or otherwise restrict the right of any local employee to express opinions to state or local elected officials on matters of public concern, nor shall a local employee be subject to acts of retaliation because the employee has expressed such opinions.
>
> For the purposes of this section, "matters of public concern" means those matters of interest to the community as a whole, whether for social, political, or other reasons, and shall include discussions that disclose any (i) evidence of corruption, impropriety, or other malfeasance on the part of government officials; (ii) violations of law; or (iii) incidence of fraud, abuse, or gross mismanagement.

Va. Code Ann. § 15.2-1512.4 (2012).

This statute supports the claim that the "employer violated a policy enabling the exercise of an employee's statutorily created right." *Rowan v. Tractor Supply Co.*, 559 S.E.2d 709, 711 (Va. 2002). For these reasons, I will deny the Motion to Dismiss as to this claim.

### B. Conversion Claim.

The Complaint alleges that the defendants "willfully, intentionally, and maliciously converted moneys earned by Marilyn Altizer for the use of The Town." (Compl. ¶ 23.) The defendants counter that "the plaintiff's conversion claim is in essence a claim for breach of a contractual duty, and the court should not permit the plaintiff to transform what is really a breach of contract claim into a tort claim for conversion." (Defs.' Mem. Supp. Mot. Dismiss 16.) I agree with the defendants.

The tort of conversion is defined as "any wrongful exercise of assumption of authority . . . over another's goods depriving him of their possession" and any "act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *Universal C.I.T. Credit Corp. v. Kaplan*, 92 S.E.2d 359, 365 (Va. 1956). While a cause of action for conversion is generally applicable only to tangible property, "many courts have recognized the tort of conversion in cases where intangible property rights arise from or are merged with a document, such as a valid stock certificate, promissory note, or bond." *United Leasing Corp. v. Thrift Ins. Co.*, 440 S.E.2d 902, 906 (Va. 1994). However, "[a]n action for conversion can be maintained only by one who has a property interest in and *is entitled to the immediate possession of the thing* alleged to have been wrongfully converted." *Id.* (emphasis added).

Because Mrs. Altizer has not alleged that she was entitled to immediate possession of the deferred funds or any income therefrom, she cannot maintain a claim for conversion and it will be dismissed.

### C. Breach of Fiduciary Duty Claim.

The Complaint also alleges that she remitted a portion of her compensation to the Town "subject to certain fiduciary duties which included the duties not to use the moneys for the Town's selfish benefit and to transmit the funds to the Plan for investment in a prompt manner," and that "[t]he defendants violated those

fiduciary duties." (Compl. ¶¶ 24-25.) The defendants respond that the plaintiffs have failed to plead properly a claim for breach of fiduciary duty under Virginia law,[9] insofar as they have failed to state facts indicating the source of such duty. I agree.

I will grant the defendants' Motion to Dismiss as to the breach of fiduciary duty claim.

V

For the reasons stated, it is **ORDERED** as follows:

1. The Defendants' Motion to Dismiss (ECF No. 4) is GRANTED IN PART AND DENIED IN PART;

2. The Motion to Dismiss is DENIED as to Counts One and Two of the Complaint as such counts relate to the claims of Marilyn Altizer against the Town of Cedar Bluff, Virginia;

3. The Motion to Dismiss is DENIED as to Count One of the Complaint as such count relates to the claim of Marilyn Altizer against James K. McGlothlin

---

[9] "In order to state a claim for breach of fiduciary duty, Plaintiff must plead the (a) duty, (b) breach, and (c) damages sustained." *Sun Hotel, Inc. v. SummitBridge Credit Invs. III, LLC*, No. CL-2012-14062, 2013 WL 8019584, at *4 (Va. Cir. Ct. Jan. 23, 2010).

but GRANTED as to Count Two as it pertains to James K. McGlothlin and Count Two is DISMISSED as it pertains to James K. McGlothlin;

    4.    The Motion to Dismiss is DENIED as to Count Three;

    5.    The Motion to Dismiss is GRANTED as to Count Four (conversion and breach of fiduciary duty) and Count Four is DISMISSED; and

    6.    The Motion to Dismiss is GRANTED as to any claims by Plaintiff Timothy Altizer and Timothy Altizer is TERMINATED as a party to this action.

ENTER: June 5, 2014

/s/ James P. Jones
United States District Judge