# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON  DIVISION

| | | |
|---|---|---|
| **MARILYN ALTIZER, ET AL.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:14CV00007 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **TOWN OF CEDAR BLUFF, VIRGINIA,** | ) | By:  James P. Jones |
| **ET AL.,** | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*Michael A. Bragg, Bragg Law, Abingdon, Virginia, and Terrance Shea Cook, T. Shea Cook, P.C., Richlands, Virginia, for Plaintiff; W. Bradford Stallard, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendants.*

In this action under 42 U.S.C. § 1983, the remaining plaintiff, a former municipal employee, claims that she was fired in violation of the First Amendment, on account of public comments made on her behalf about the alleged failure to promptly pay funds into the municipal employees' deferred compensation plan.  She further contends that her plan funds were taken from her without just compensation, in violation of the Fifth Amendment's Takings Clause. The plaintiff also asserts a pendant state law cause of action for wrongful termination.

Following discovery, the defendants have moved for summary judgment. The defendants' motion is ripe for decision, having been fully briefed by the

parties and orally argued. For the reasons that follow, I will grant the defendants'
motion and enter judgment in their favor.

## I.

The following facts are taken from the summary judgment record.

The plaintiff Marilyn Altizer ("Mrs. Altizer") was formerly employed as an
assistant clerk for a small Virginia municipality, the Town of Cedar Bluff (the
"Town"). During her employment with the Town, Mrs. Altizer participated in a
deferred compensation plan. Pursuant to the plan, established under a provision of
the Internal Revenue Code,[1] the Town withheld between $106.88 and $119.77
from each of Mrs. Altizer's biweekly paychecks. The amount withheld depended
upon Mrs. Altizer's earnings during a particular pay period. The withholdings
were eventually deposited in an investment account managed by VALIC, the third-
party administrator of the Town's deferred compensation plan.[2]

Mrs. Altizer, a longtime Town employee, received criticism from her
supervisor about her job performance, including a written warning that she would
be terminated if she did not improve. Shortly after the warning, she received her

---

[1] *See* 26 U.S.C. § 457 ("Deferred compensation plans of State and local
governments and tax-exempt organizations.").

[2] VALIC, an insurance company, also known as The Variable Annuity Life
Insurance Company, specializes in providing retirement plans for governments and other
not-for-profit institutions. *See* Wikipedia, *VALIC*, http://en.wikipedia.org/wiki/VALIC
(last visited Apr. 9, 2015). Mrs. Altizer's contributions were invested by VALIC in
various stock and fixed income mutual funds. (Defs.' Reply Mem. Ex. 3, Attach. B, ECF
No. 50-3.)

-2-

2013 first quarter benefits statement from VALIC.  She saw that no contributions had been made to her plan during that quarter, despite regular deductions from her paychecks.   The parties do not dispute that payments had been approved by the Town Council, with checks drawn for payment to VALIC.  The parties also agree that checks to VALIC were often held from being mailed by James McGlothlin, the Town Manager, over the course of the preceding several years.  McGlothlin acknowledges that the checks were being held until additional Town funds existed to cover them.  McGlothlin also held checks payable to other Town creditors for the same reason.[3]

Mrs. Altizer approached the Town's Mayor, Jerry Herron, about the absence of payments to VALIC.  Herron told her that he would discuss the issue with McGlothlin.  Herron later told Mrs. Altizer that the payments would be forwarded to VALIC.  Mrs. Altizer also approached other Town Council members and told them that she believed that the matter needed to be investigated further and asked that an explanation be provided as to why the payments had been delayed. Likewise, Tim Altizer ("Mr. Altizer"), the plaintiff's spouse, discussed the situation with McGlothlin in an attempt to obtain an explanation and a commitment to correct the matter.

---

[3]   As the plaintiff points out, the Town during this period was not without other sources of money, specifically a special bank account used to fund the construction and equipping of a new fire department for the Town.

On May 14, 2013, the Altizers appeared before the Town Council at its regular public meeting. Mr. Altizer asked to be placed on the agenda. Mr. Altizer addressed the Town Council regarding various issues, including the delay in submitting plan contributions to VALIC. Mr. Altizer has fully described the content and scope of his comments before the Town Council in an affidavit and deposition testimony filed with the court for the purpose of the present motion.

Later in the same Town Council meeting, Mrs. Altizer spoke during the open citizen comments portion of the meeting. On March 25, 2013, prior to her public comments and a few weeks before Mrs. Altizer had seen her quarterly benefits statement, she had received a written reprimand from Town Manager McGlothlin concerning her alleged failure to process delinquent utility customer disconnections. In the reprimand, she had been told that if she did not improve, she would be fired. (McGlothlin Aff. Ex. C, at 31, ECF No. 42-10.)[4]

In her comments to the Town Council, Mrs. Altizer attempted to justify her job performance and did not discuss the issue of the timeliness of payments to VALIC. Though the parties dispute exactly what was said at this time — with no

---

[4] The defendants contend that at the time of Mrs. Altizer's termination, the delinquent utility bills amounted to approximately $130,000, causing a cash problem for the Town, since the revenue to the Town from the utility department was about $30,000 per month. (McGlothlin Dep. 34-36, ECF No. 42-3.) While utility bills were sent for sewage, garbage collection, and water, it was asserted that many renters would move rather than pay long-delinquent amounts that had accumulated without the water service being disconnected. (Trent Aff. ¶¶ 7,8,9, ECF No. 42-9.)

-4-

transcript or recording of the meeting available — it is clear that Mrs. Altizer and McGlothlin engaged in a series of exchanges that reflected their personal animosity towards one another. On May 17, 2013, three days after the Town Council meeting, McGlothin terminated Mrs. Altizer's employment.

The parties espouse different reasons why Mrs. Altizer was terminated. She contends that she was terminated as a result of the comments Mr. Altizer made on her behalf before the Town Council about the delay in transmitting plan contributions. In turn, the defendants contend that Mrs. Altizer was a poor employee who deserved to be fired. Among other things, the defendants assert that Mrs. Altizer repeatedly failed to process utility bill delinquencies in a timely manner and was frequently insubordinate to McGlothlin, including at the Town Council meeting.

On February 18, 2014, the Altizers filed the present suit seeking compensatory and punitive damages against the Town and McGlothlin in his individual capacity. Count One of the Complaint charges a violation of the First Amendment in relation to Mrs. Altizer's termination. Count Two alleges a violation of the Fifth Amendment Takings Clause arising from the Town's alleged use of the deferred compensation plan withholdings. The remaining claims assert violations of state law, including wrongful termination, conversion, and breach of fiduciary duty.

Early on in the case, I granted in part and denied in part a Motion to Dismiss filed by the defendants. *Altizer v. Town of Cedar Bluff, Va.*, No. 1:14CV00007, 2014 WL 2535057 (W.D. Va. June 5, 2014), *reconsideration denied*, 2014 WL 2712068 (W.D. Va. June 16, 2014). Pursuant to my order, Mr. Altizer was terminated as a party plaintiff to this litigation because of a lack of standing. Additionally, Mrs. Altizer's state law claims for conversion and breach of fiduciary duty were dismissed. Mrs. Altizer's Fifth Amendment claim against McGlothlin was also dismissed. Mrs. Altizer's remaining claims survived the Motion to Dismiss, and are now subject to the Motion for Summary Judgment.

## II.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To raise a genuine issue of material fact sufficient to avoid summary judgment, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

The defendants have asserted numerous arguments in favor of their Motion for Summary Judgment regarding each of the plaintiff's remaining causes of action. In considering the parties' arguments, I will address each of the plaintiff's remaining claims in turn.

## A. First Amendment Retaliation.

In Count One of the plaintiff's Complaint, Mrs. Altizer asserts that "[t]he Town, by and through Defendant McGlothlin, terminated the employment of Marilyn Altizer in direct retaliation for the exercise of the rights of free speech on matters of public concern." (Compl. ¶ 12, ECF No. 1.) The specific speech at issue involves the comments of the plaintiff's spouse — made on her behalf — at the May 14 meeting of the Town Council. (*Id.* ¶ 11.)

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). "While government employees do not lose their constitutional rights at work, the Supreme Court has repeatedly held that the government may impose certain restraints on its employees' speech and take action against them that would be unconstitutional if applied to the general public." *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011). In evaluating "whether a

public employee has stated a claim under the First Amendment for retaliatory discharge," I must consider:

> (1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) whether the employee's speech was a substantial factor in the employee's termination decision.

*McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998). To avoid summary judgment, the plaintiff is "required to adduce evidence sufficient to show material facts in dispute as to each of the three prongs of the *McVey* test." *Adams*, 640 F.3d at 561.

Regarding the first *McVey* element, "[w]hether speech fairly relates to a public concern or expresses a private grievance or a matter of immediate self-interest must be determined by the content, the form, and the context of the speech." *Stroman v. Colleton Cnty. Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992). Speech properly addresses a matter of public concern when "it affects the social, political, or general well-being of a community." *Edwards v. City of Goldsboro*, 178 F.3d 231, 246 (4th Cir. 1999). "Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the

First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee." *Stroman*, 981 F.2d at 156.

Whether the plaintiff's claim addresses a matter of public concern requires an examination of the comments made by Mr. Altizer at the Town Council meeting. Pursuant to his affidavit filed in opposition to summary judgment, Mr. Altizer states that he spoke at the Town Council meeting because he and Mrs. Altizer had "decided that the concerns [regarding the withheld plan contributions] should be aired publicly at the meeting." (Timothy Altizer Aff. ¶ 3, ECF No. 48-7.) More specifically, he stated in his affidavit that "[t]he issues which concern [Mrs. Altizer] and me went far beyond gaining compensation for [Mrs. Altizer's] losses." (*Id.* ¶ 4.) He also states that his discussion of delayed payment of plan contributions implicated possible mismanagement, embezzlement, financial instability, and other associated issues of public concern. (*Id.*) However, Mr. Altizer's deposition testimony reveals a different focus.

In recounting his statements before the Town Council during his deposition testimony, Mr. Altizer stated that at the beginning of his public comments, he was asked if he was "speaking on behalf of all the [Town] employees?" (Timothy Altizer Dep. 21, ECF No. 42-1.) He responded,

> No . . . my comments regarding the salary deferral plan will only be on behalf of my wife. There's other employees, you know, there's other town employees here. Their monies was [sic] handled the same

> way. You know, if they would like to make comments regarding this matter, that's for them, but I'm only speaking on behalf of my wife.

(*Id.*) Mr. Altizer then "informed" the Town Council that he felt that they were not going into closed session properly and described sales tax issues that were unrelated to the issue of the deferred compensation withholdings. (*Id.*) Going forward, Mr. Altizer produced a graph for the Town Council that showed "regular and rhythmic" payments into the deferred compensation plan prior to the second quarter of 2010, at which time they became "very irregular and very erratic." (*Id.*) Consequently, Mr. Altizer "felt that there had been lost earnings as a result of the unreasonable amount of time that it was taking to get the money [deposited]." (*Id.* at 22.) He also expressed concern that laws were potentially violated in the way that the contributions were handled and that the matter should be investigated further with an accompanying explanation of why the delays occurred. Mr. Altizer made no further comments regarding this issue during the Town Council meeting.

I find that Mr. Altizer's statements on behalf of Mrs. Altizer were limited to addressing the perceived loss Mrs. Altizer allegedly suffered as a result of the Town's delay in submitting plan contributions to VALIC. The plaintiff contends that in stating that Mr. Altizer's comments were made only on his wife's behalf, he was merely stating that no other employees had authorized him to speak. However, I find that the totality of his statements reveals the personal, not public, nature of his concerns. In context, Mr. Altizer's statements about potential

investment losses or legal violations addressed personal grievances related to his wife's deferred compensation withholdings. To the extent Mr. Altizer seeks to broaden the scope of his comments through his affidavit to include general issues of mismanagement, embezzlement, or financial instability, his deposition testimony does not support that expanded interpretation. *See Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990) (noting that an issue of disputed fact cannot be created by submitting an affidavit that is inconsistent with prior deposition testimony).

Regarding the causation element of *McVey*,[5]

> [t]he initial burden lies with the plaintiff, who must show that [their] protected expression was a 'substantial' or 'motivating' factor in the employer's decision to terminate him. . . . If the plaintiff successfully makes that showing, the defendant still may avoid liability if he can show, by a preponderance of the evidence, that the decision to terminate the plaintiff would have been made even in the absence of the protected expression, more simply, the protected speech was not the but for cause of the termination.

*Wagner v. Wheeler*, 13 F.3d 86, 90 (4th Cir. 1993) (citation omitted). "[A] first amendment violation does not result 'simply because the protected conduct makes the employer more certain of the correctness' of the decision to terminate an

---

[5] Regarding the second *McVey* element, even if the speech involves a matter of public concern, the employee's interest must "outweigh[] the public employer's interest in what the employer has determined to be the appropriate operation of the workplace." *Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir. 2000). Mr. Altizer's statements do not implicate this element of *McVey*. Rather, to the extent that Mrs. Altizer's personal statements before the Town Council effect the "operation of the workplace," this is an issue of causation under *McVey*.

employee." *Id.* at 91 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286 (1977)). Put simply, the "causation requirement was the result of the [Supreme] Court's desire to prevent a government employee from insulating himself from legitimate termination simply by engaging in protected speech." *Id.* at 90. As a result, "[t]he causation requirement is rigorous." *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990).

Mrs. Altizer contends that the exercise of her First Amendment rights — through Mr. Altizer's statements on her behalf — was a substantial factor in her termination. The primary support for her argument is the timing of events in this case. First, she alleges in her brief that McGlothlin conceded that he decided to fire her after "the addresses to the Town Council at the May 14 meeting." (Pl.'s Mem. in Opp'n to Mot. for Summ. J. 10, ECF No. 48.) Second, she asserts that any issues associated with her job performance were corrected prior to her termination, because she had addressed the backlog of utility cut-offs by bringing them up to date. As a result, Mrs. Altizer contends that the timing of her termination indicates that the exercise of her First Amendment rights resulted in her termination.

The Fourth Circuit has stated, however, that "temporal proximity . . . is simply too slender a reed on which to rest a Section 1983 retaliatory discharge claim." *Wagner*, 13 F.3d at 91. Beyond the timing of events in this case, Mrs.

-12-

Altizer has failed to provide any real evidence that "the ostensibly legitimate reasons given for [her] termination were pretextual." *Id.* In contrast, the record demonstrates that Mrs. Altizer was terminated as a result of her record of poor job performance and insubordination.

Regarding Mrs. Altizer's job performance, the defendants have provided extensive documentation of various employee performance issues over an extended period of time. Of particular concern to her employer, Mrs. Altizer repeatedly failed to timely process delinquent utility account cut-offs in accordance with Town policy and her job responsibilities, resulting in a significant financial burden for the Town. In response, Mrs. Altizer contends that at the time of her termination, she had brought action on the delinquent utility bills up to date. Regardless, the parties do not dispute that Mrs. Altizer was aware of her precarious position with her employer prior to her termination.

The parties also do not dispute that the tipping point regarding Mrs. Altizer's employment occurred as a result of the May 14 public meeting. On the one hand, Mrs. Altizer stresses the significance of the comments by Mr. Altizer as the reason for her termination; on the other, the defendants focus on Mrs. Altizer's individual comments. Mrs. Altizer's comments largely concerned problems with McGlothlin as her supervisor. Although the details are disputed, there is no question that the exchange between Mrs. Altizer and McGlothlin was heated and inappropriate for a

-13-

public meeting.  It is clear that Mrs. Altizer's comments were inflammatory —
containing accusations of sexism and name calling.[6]  Similarly, McGlothlin
repeatedly interrupted Mrs. Altizer during her statements.  Within days of their
exchange, McGlothlin terminated Mrs. Altizer's employment, having testified
during his deposition that he was "99 percent sure [he] was going to terminate her"
prior to the May 14 meeting.  (McGlothlin Dep. 53, ECF No. 42-3.)  Based on the
record, I find that Mrs. Altizer's alleged job performance was not a mere pretext
for her termination, particularly within the context of the public dispute with her
supervisor before the Town Council.

Nevertheless, even had the plaintiff proved a constitutional violation,
McGlothlin would be entitled to qualified immunity from the claim.  As stated by
the Fourth Circuit,

> Qualified immunity shields government officials performing
> discretionary functions from personal-capacity liability for civil
> damages under §1983, insofar as their conduct does not violate clearly
> established statutory or constitutional rights of which a reasonable
> person would have known. . . . A right is clearly established if the
> contours of the right are sufficiently clear so that a reasonable officer
> would have understood, under the circumstances at hand, that his
> behavior violated the right.

*Campbell v. Galloway*, 483 F.3d 258, 270–71 (4th Cir. 2007) (internal quotation
marks and citations omitted).  "In determining whether the specific right allegedly

---

[6]  Mrs. Altizer admits that during her public comments, she accused McGlothlin
of having called her a "trailer trash butthole," which he heatedly denied. (Marilyn Altizer
Dep. 30, ECF No. 42-2.)

violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992); *see also Campbell*, 483 F.3d at 271 ("[T]he determination of whether a given right was clearly established requires us to define that right 'at a high level of particularity.'"). "[O]nly infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a 'particularized balancing' that is subtle, difficult to apply, and not yet well-defined." *DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995).

The broad legal principle governing this case is that public employees may not be terminated on a basis that infringes their First Amendment right. The more precise question in this case, however, is whether a reasonable official in McGlothlin's position would have known that Mr. Altizer's comments on behalf of the plaintiff addressed a matter of public concern. As previously stated, Mr. Altizer's comments largely addressed personal grievances, not matters of general public concern. Therefore, even if Mrs. Altizer was terminated as a result of Mr. Altizer's comments, I cannot find that McGlothlin should have known that those statements entitled Mrs. Altizer to First Amendment protection. *See McVey*, 157

-15-

F.3d at 277 ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." (internal quotation marks and citation omitted)).

Additionally, the Town cannot be held liable for McGlothlin's decision to terminate Mrs. Altizer, because her alleged injury was not "caused by an identifiable municipal policy or custom." *See Riddick v. Sch. Bd. of the City of Portsmouth*, 238 F.3d 518, 522 (4th Cir. 2000).

As stated by the Fourth Circuit, "[S]ection 1983 was not designed to impose municipal liability under the doctrine of respondeat superior, [therefore] the 'official policy' requirement was 'intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *Id.* at 523 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). To be liable for the actions of an employee, the "decisionmaker" must possess "final authority to establish municipal policy with respect to the action ordered." *Id.* (quoting *Pembaur*, 475 U.S. at 481). "To qualify as a 'final policymaking official,' a municipal official must have the responsibility and authority to implement *final* municipal policy with respect to a particular course of action." *Id.* (quoting *Pembaur*, 475 U.S. at 482–83). Whether an employee possesses final policymaking authority is a question of local law, or in this case,

requires an interpretation of the Town Charter. *Cf. id.* ("The question of who possesses final policymaking authority is one of state law.").

Regarding McGlothlin's authority to terminate employees as town manager, the Town Charter states that the town manager "shall have the authority and it shall be his duty"

> [t]o appoint such officers and employees as the council shall determine and authorize as are necessary for the proper administration of the affairs of the town with the power to discipline and remove any such officer of employee . . . . Any officer or employee so removed shall have the right of appeal to the council within thirty days after his removal and after notice to the town manager. The action of the council on such appeal shall be final.

(Town Charter §§ 3-91, -912, ECF No. 50-3.) Pursuant to this provision of the Town Charter, any employee terminated by the Town Manager retains the right to appeal that decision to the Town Council. Stated differently, McGlothlin's authority to terminate Mrs. Altizer's employment was not final, and was subject to determination by the Town Council, a course that was not pursued by Mrs. Altizer. As a result, McGlothlin's "actions could not constitute official municipal policy" regarding this issue. *See Riddick*, 238 F.3d at 523–24.

## B. Wrongful Termination.

Mrs. Altizer alleges that "[t]he Defendants terminated [her] employment . . . because of her public exposure of [t]he Town's unlawful practice of using for its own benefit moneys withheld from employees and held in trust." (Compl. ¶ 19.)

She has presented this claim in a manner analogous to her First Amendment cause of action, and contends that she was terminated in retaliation for exercising her right of free speech on a matter of public concern and that her alleged job performance was a pretext for her termination.

Generally, employment in Virginia is at will, but the Supreme Court of Virginia, in *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985), created "an exception to the employment-at-will doctrine limited to discharges which violate *public* policy, that is, the policy underlying existing laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general." *Miller v. SEVAMP, Inc.*, 362 S.E.2d 915, 918 (Va. 1987). This exception only applies in narrow circumstances, and "[a]s a threshold matter, a plaintiff attempting to assert a wrongful discharge claim pursuant to *Bowman* must identify a Virginia statute that the employer-defendant violated by terminating the plaintiff." *Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 450 (E.D. Va. 2002); *see also McCarthy v. Tex. Instruments, Inc.*, 999 F. Supp. 823, 829 (E.D. Va. 1998) ("A *Bowman* claim must find root in a *state* statute.").

In this case, the plaintiff's asserted statutory right is defined as follows:

Nothing in this chapter shall be construed to prohibit or otherwise restrict the right of any local employee to express opinions to state or local elected officials on matters of public concern, nor shall a local employee be subject to acts of retaliation because the employee has expressed such opinions.

-18-

> For the purposes of this section, "matters of public concern" means those matters of interest to the community as a whole, whether for social, political, or other reasons, and shall include discussions that disclose any (i) evidence of corruption, impropriety, or other malfeasance on the part of government officials; (ii) violations of law; or (iii) incidence of fraud, abuse, or gross mismanagement.

Va. Code Ann. § 15.2-1512.4.

As an initial matter, the plaintiff relies primarily on temporal evidence to establish causation. Stated differently, she contends that Mr. Altizer's comments on her behalf were followed by her termination within days of the May 14 public meeting. For the reasons previously stated in addressing the plaintiff's First Amendment claim, she has failed to provide sufficient evidence to establish causation in this context.

Moreover, Mr. Altizer's statements on behalf of Mrs. Altizer do not satisfy the definition of "matters of public concern" set forth in Virginia Code § 15.2-1512.4. As previously stated, Mr. Altizer's statements were largely personal in nature in that they sought to address an employee grievance associated with the perceived mishandling of deferred compensation withholdings. The plaintiff asserts that this raises an issue of wrongdoing, malfeasance, and potential fraud. More specifically, the plaintiff asserts that the Town served as the trustee of employee withholdings, but failed to fulfill its responsibilities with respect to those funds. The problem with the plaintiff's argument, however, is that she has failed to

Case 1:14-cv-00007-JPJ-PMS   Document 54   Filed 04/17/15   Page 19 of 23   Pageid#: 695

provide any evidence that the Town's delay in submitting plan contributions constituted wrongdoing within the meaning of section 15.2-1512.4.

As an initial matter, it is not clear that the Town, as Mrs. Altizer's employer, was legally obligated to serve as a trustee for the plan withholdings prior to their deposit with the plan administrator. Moreover, as will be discussed more fully regarding Mrs. Altizer's Fifth Amendment claim, there is also no evidence that the length of delay in submitting withholdings was unreasonable. The plaintiff may be correct that the delay was outside of the Town's historic pattern of submitting withholdings, but this change in behavior is not inherently unreasonable without some support in the evidence. As a result, the plaintiff lacks factual or legal support for her position that the delay constituted wrongdoing, which is necessary to trigger protection under the limited definition of "matters of public concern" contained in section 15.2-1512.4.

## C. Fifth Amendment.

The plaintiff contends that the Town violated the Fifth Amendment by holding her withheld deferred compensation contributions and not transmitting the funds to the plan administrator within a reasonable time as required by the Internal Revenue Code. Pursuant to 26 U.S.C. § 457, all assets and income of a deferred compensation plan must be held in trust for the exclusive benefit of the employee. *See id.* §457(g)(1). Under the applicable Treasury Regulation, "[a]mounts deferred

under an eligible governmental plan must be transferred to a trust within a period that is not longer than is reasonable for the proper administration of the participant accounts (if any)." Treas. Reg. § 1.457-8(a)(2)(ii). Under these provisions, plan contributions must be transferred to a trust within a reasonable amount of time. Mrs. Altizer asserts that the Town failed to satisfy these requirements,[7] which she contends supports her claim under the Fifth Amendment's Takings Clause.

The Takings Clause, applicable to the states through the Fourteenth Amendment, forbids the taking of private property "for public use, without just compensation." U.S. Const. amend V. To assert a Fifth Amendment claim, the plaintiff must establish a deprivation of a "cognizable property interest." *L.M. Everhart Const., Inc. v. Jefferson Cnty. Planning Comm'n*, 2 F.3d 48, 51 (4th Cir. 1993). The length of deprivation may vary, because "[i]t is well established that temporary takings are as protected by the Constitution as are permanent ones." *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1033 (1992) (Kennedy, J. concurring) (citing *First English Evangelical Lutheran Church of Glendale v. Cnty. of L.A.*, 482 U.S. 304, 318 (1987)).

As previously stated, Mrs. Altizer lacks sufficient evidence that the delay in submitting withholdings to VALIC was unreasonable. She merely contends that

---

[7] The plaintiff contends that some withholdings were never transmitted to VALIC, including withholdings in May 2010 and April 2011. The defendants have provided sufficient documentary evidence that these funds were in fact transmitted to VALIC.

this is a question of fact that a jury may decide based on the Town's historic pattern of payment. I disagree. Additional evidence is required to establish what is reasonable in this context. The plaintiff acknowledges that she will not submit any expert testimony regarding this issue at trial. Without expert testimony or comparable evidence, I do not believe that a jury will be equipped to resolve this issue.

Additionally, the plaintiff has failed to present any evidence of damages resulting from the alleged taking. In short, she merely asserts, without evidence, that the delay in transmitting her withholdings probably resulted in a lost investment opportunity. The plaintiff acknowledges, however, that the lost investment opportunity in this case could have resulted in either a profit or a loss. Without evidence to the contrary, it is entirely possible that the delay in transmitting Mrs. Altizer's withholdings — which were to be invested in mutual funds — could have actually shielded the plaintiff from short-term loss. Under these circumstances, the plaintiff has failed to present evidence of any damages associated with her Fifth Amendment claim.

## IV.

For the foregoing reasons, it is **ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 41) is GRANTED. A separate final judgment will be entered forthwith.

ENTER: April 17, 2015

/s/ James P. Jones
United States District Judge